# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Michael J. Wiegand ) | Civil Action No. 2:19-1842-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Sgt. David Long; Sgt. Brian Varnadoe; ) | |
| the Colleton County Sheriff's Office; ) | |
| and R.A. Strickland, in his official ) | |
| capacity as Sheriff of Colleton County, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is the Magistrate Judge's Report and Recommendation ("R & R") that the remaining Defendants' motion for partial summary judgment be granted in part and denied in part. (Dkt. No. 52.) For the reasons set forth below, the Court adopts the R & R as the order of the Court.

**I.    Background**

This action arises from an incident on May 6, 2017 in Colleton County, South Carolina. In the complaint, Plaintiff alleges that at around 4 P.M. he discovered a brush fire on his property, which he subdued with a water hose and pressure water. Plaintiff's neighbors witnessed the fire and called emergency services. Colleton County Sheriff's Office ("CCSO") personnel arrived to Plaintiff's property shortly thereafter and parked in and near Plaintiff's driveway, but did not approach the house. Plaintiff stood on the porch and told the Officers he "did not want to speak with them, and they had no permission to tarry on" his property. The Officers appeared to leave the area and fire emergency services arrived. Plaintiff's wife then arrived and asked the Officers, who had not left, to leave. Plaintiff realized that the Officers had not left and made "multiple demands for them to vacate." Sheriff Strickland "began to verbally

-1-

berate Plaintiff" while Plaintiff continued to demand the Officers leave.  Strickland then "proceeded to use excessive and unlawful force to subdue Plaintiff."  Plaintiff suffered physical injuries when his arm was pulled behind his back for handcuffs and he "felt someone kneeing him on the side of his body in his ribs."  Plaintiff was put in a cruiser and an Officer transported him to the hospital.  At the hospital, a physician informed Strickland that Plaintiff had multiple broken ribs.  Strickland antagonized Plaintiff in the hospital and instructed Officer Long to arrest him for resisting arrest in order to "CYA."

Plaintiff brings the following claims against the moving Defendants: First Cause of Action for "negligence, gross negligence as to all Defendants"; Second Cause of Action for "negligent hiring, training, and supervision as to Defendant CCSO"; Third Cause of Action for "negligent infliction of emotional distress" as to unspecified Defendants; Fourth Cause of Action for "civil conspiracy as to all Defendants"; Fifth Cause of Action for "pain and suffering" as a result of "all Defendants'" conduct; Sixth Cause of Action for "42 U.S.C. § 1983 improper search & seizure, excessive force & due process violations" as to unspecified Defendants; and Seventh Cause of Action for "42 U.S.C. § 1983 deliberate indifference" as to unspecified Defendants. (Dkt. No. 1-1.)  Defendants Long and Varnadoe "are sued in their individual capacities." (Dkt. No. 1-1 ¶ 8.)

Defendants move for summary judgment on every claim, except for the Sixth Cause of Action's claim for § 1983 use of excessive force by Strickland. (Dkt. No. 1-1 ¶ 107.)

## II.    Legal Standard

### A.    Review of the R & R

The Magistrate Judge makes only a recommendation that has no presumptive weight and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The Court may "accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where there are no objections to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

**B.    Motion for Summary Judgment**

Rule 56 allows for summary judgment where the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment should therefore be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant has the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant, in response, must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence.'" *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.   Discussion

A.   **First Cause of Action for "negligence, gross negligence as to all Defendants"; Second Cause of Action for "negligent hiring, training, and supervision as to Defendant CCSO"; Third Cause of Action for "negligent infliction of emotional distress" as to unspecified Defendants; Fourth Cause of Action for "civil conspiracy as to all Defendants"; and Seventh Cause of Action for "42 U.S.C. § 1983 deliberate indifference"**

Defendants argue that the tort claims are barred by the statutes of limitations and the Seventh Cause of Action purports to bring a claim for monetary damages against Defendant CSSO, which is immune from such under the Eleventh Amendment. Plaintiff made no argument in opposition, which the Magistrate Judge recommends be deemed a concession of the claims. Plaintiff did not object to this recommendation. The Court therefore reviews the recommendation for clear error on the face of the record and finds no clear error. The Court adopts the recommendation and grants Defendants' motion for summary judgment on these claims.

B.   **Sixth Cause of Action for § 1983 "improper search & seizure, excessive force & due process violations" by Unspecified Defendants**

Because the complaint does not specify which Defendants are the target of this claim, the Court construes it as pertaining to all three individual Defendants: Long, Varnadoe and Strickland.

   1.   **Claim for Improper Search and Seizure by Long, Varnadoe and Strickland**

It unclear from the complaint which factual allegations Plaintiff intends to support a claim for violation of his Fourth Amendment right by Defendants Long or Varnadoe, who are sued in their individual capacities (Dkt. No. 1-1 ¶¶ 8, 107), and Defendant Strickland, who is sued in his official capacity (Dkt. No. 1-1 ¶ 5).[1]  Defendants move for summary judgment

---

[1] The complaint pleads that Strickland is sued in his official capacity (Dkt. No. 1-1 ¶ 5), which Plaintiff also states in the case caption, but the complaint also pleads that Strickland is, with Long and Varnadoe, "sued in their individual capacities" (Dkt. No. 1-1 ¶ 8). The Magistrate Judge notes this discrepancy and finds that, to the extent the claims are brought against Long and

because there is a material dispute in the record as to whether Plaintiff's actions constituted disorderly conduct at the time he was arrested. For instance, Plaintiff testified that he had a beer can in his hand, which was his fourth beer in a two or two-and-a-half hour period because he'd been drinking since 2 P.M. (Dkt. No. 49-2.) Long and Varnadoe both testified that Plaintiff appeared intoxicated (Dkt. Nos. 43-6, 43-7), but Varnadoe did not remember (at the time of his deposition) whether Plaintiff resisted arrest or was violent (Dkt. No. 43-7). Defendants also argue that they are entitled to qualified immunity for a claim of arrest without probable cause. Plaintiff made no argument in opposition to Defendants' motion to dismiss this claim for unlawful search and seizure, nor did Plaintiff raise any objection to this portion of the R & R. The Court therefore reviews the recommendation for clear error on the face of the record, and finds none. The Court adopts the recommendation and grants Defendants' motion for summary judgment on the Sixth Cause of Action's claim for unreasonable search and seizure by Long, Varnadoe and Strickland.

  **2. Claim for Use of Excessive Force by Long and Varnadoe**

Defendants seek summary judgment on this claim as to Long and Varnadoe, but not Strickland. To bring a claim for use of excessive force under § 1983, Plaintiff must demonstrate (1) that he "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining the reasonableness of an officer's actions requires a careful

---

Varnadoe in their official capacities, the claims are barred. (Dkt. No. 52 at n.9.) Plaintiff made no objection to this finding.

balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). To evaluate whether the forced used was reasonable, the district court may consider "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Courts may also consider the "extent of the plaintiff's injuries," *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003), but "[s]ubjective factors involving the officer's motives, intent, or propensities are not relevant," *Peggy v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) (internal quotation marks omitted).

Relevant to these considerations, the record reflects that when the officers initially arrived to Plaintiff's property, Plaintiff "ran into my house and got an old broken pellet gun and laid it on my front railing. And when they all pulled up to the end of the driveway and when they all go out I told them to get the F off my property." (Dkt. No. 49-2 at 43.) Plaintiff retrieved the pellet gun "to defend my family and my house" from the officers. (*Id*.) Plaintiff then put the pellet gun inside his house, and he and his father spoke with the officers, "shook hands" and "agreed that everything was safe and okay." (*Id*. at 48.) Once Plaintiff realized that the officers had not driven away, he "got upset" so he "walked down there and didn't even really think about it. I had a can of beer in my hand" and told the officers again to "[g]et the F out of here. Get off my property. Words were exchanged between me and Andy [Strickland]. He was cussing and I was cussing." (*Id*. at 55.) When Plaintiff told Strickland he was embarrassing himself, Strickland moved forward and:

> . . . like a charge . . . hit the can right out of my hand and like smashed me to the ground so fast that like it knocked the wind out of me or something. And he handcuffed me and I was like flat down on my stomach. And somebody got on top of my back and was holding my head down so I couldn't see. I was still like winded. I couldn't like breathe or anything. Andy just started kneeing me on my

>left side and like the pain, I couldn't breathe. I was - - and then all of a sudden this crack. I will never forget this crack that I heard, and then the pain was - - I was like in shock when all this was happening. And I just - - I didn't know like the pain and the shock, and I still was having a hard time breathing; and I just remember getting into the car and I was like in so much pain. I am like, Stencil, I don't know what the hell is going on here, but something is wrong. Something is wrong here. Stencil, please take me to the hospital.

(*Id*. at 55-56.)

Perhaps more relevant to the claims against Long and Varnadoe, when asked in his deposition, "So you don't know any of the Officers that touched you other than Andy?" Plaintiff testified, "No, I don't." (*Id*. at 66.) Plaintiff did not remember Long or Varnadoe walking him to the car. (*Id*. at 67.)

Long himself testified that "when I arrived, my duties entailed securing the highway so that the forestry could offload a bulldozer in the middle of the road, the paved road, so that they could cut a fire line around this perimeter [because there] was a fire in the woods" although Long was "never told" the origin of the fire. (Dkt. No. 43-5 at 4, 6.) Plaintiff then walked toward the road while drinking from a beer can and repeatedly "started yelling . . . Fuck you, get off my property" specifically to Strickland and Varnadoe. (*Id*. at 6.) The repeated profanity "concerned" Long and "was offensive" to him, especially with neighborhood cars carrying children stopping nearby. Long therefore "told him, stop cussing. Go on back to your house. . . . We're out here on the road trying to get this fire under control. Go back to your house, stop cussing." (*Id*. at 7.) Plaintiff then approached Strickland and said "Fuck you, Andy. I'm going to get you." (*Id*. at 7.) Plaintiff "continued with the cussing. I told him three times, go back home, you've been drinking. You don't need to be out here by the road. There is children in these cards. And he was right up against the sheriff, and I told him - - I said, you've got to go back to your house. You're going to get locked up for public disorderly conduct if you don't. . . . And after the third, maybe even the fourth time I told him that, I placed him - - I placed him under arrest." (*Id*. at 9.) There

"was a little bit of a struggle" between Long and Plaintiff because Plaintiff "resisted"—"It was brief. He snatched away. He - - I think he was actually trying to hit the sheriff. His arm was up, he was in a swinging motion. I grabbed him, Varnadoe assisted me, we went to the ground and we placed handcuffs on him." (*Id.*)  Then the officers "[s]tood him back up and brushed him off." (*Id*. at 10.)

Varnadoe testified, describing the arrest, that "I might have had an arm or I might have put the handcuffs on him. I don't remember. I know - - I know at some point I had my hand on Mr. Wiegand. It was - - I had an arm or either a handcuff. I'm not really sure." (Dkt. No. 43-7 at 4.)  Varnadoe did not recall if Strickland was "standing, kneeling, what he was doing." (*Id*. at 6.)  Varnadoe did not recall whether he, Strickland or Long "placed [Plaintiff] to the ground." (*Id*.)  And while Varnadoe did not know who decided to arrest Plaintiff, he believed that arresting was the right choice because Plaintiff "was disrupting everything," including fire response vehicles from entering the property,[2] "was drunk and belligerent out there by the highway . . . [a]nd the responders were afraid to enter the property because of how he's behaving," and generally "would not comply with the directives given to him" such as to retreat from the property line and road back to the house. (*Id*. at 9, 13.)  Varnadoe did not recall falling on top of Plaintiff, but thought he "was probably one of them." (*Id*. at 20.)  Plaintiff "did not hit" Varnadoe, but "probably did resist" by being "just stiff. Would not bring his hand behind his back, that type of deal. . . . You cans straighten up or stiffen up and not comply, and that's resisting." (*Id*. at 22.)

This record reflects that Long and Varnadoe participated in arresting Plaintiff.  The record also reflects material dispute of fact as to their conduct during the arrest and whether the conduct was reasonable in light of the relevant considerations such as the severity Plaintiff's

---

[2] Plaintiff testified that, when he walked down his driveway, there were no fire or forestry trucks on the road and he didn't see any getting ready to unload a tractor to cut a fire line in the property. (Dkt. No. 43-3 at 28.)

alleged crime (resisting arrest), whether Plaintiff was in fact resisting arrest, and the extent to which he posed a threat to the officers by virtue of his alleged intoxication, cursing, and brandishing a pellet gun. The Court adopts the Magistrate Judge's finding that these are issues of fact that are not resolved by this record.

Long and Varnadoe argue that the use of excessive force claim must nonetheless be dismissed because they are entitled to qualified immunity. When a qualified immunity defense is raised, the Court must determine (1) whether the facts viewed in the plaintiff's favor make out a violation of a constitutional right, and (2) whether that right was clearly established at the time. *See Stanton v. Elliott*, No. 21-1197, 2022 WL 288012, at *4 (4th Cir. Feb. 1, 2022). As discussed, the record facts do make out a violation of constitutional right when construed in Plaintiff's favor. As to the second factor, the Court must first "define the precise right" at issue, *Est. of Armstrong ex rel. Armstrong v. Vill. Of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016), and then determine whether it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The inquiry is "whether the violative nature of *particular* conduct is clearly established." *Id*. at 12 (emphasis in original). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Defendants have "not found any case that would place Defendants Long or Varnadoe on notice that either assisting Strickland to control the Plaintiff on the ground for four to six seconds, or taking the Plaintiff to the ground after he pulled away from Long, would constitute excessive force." (Dkt. No. 43-1 at 26.) And the record, when construed in a light most favorable to Plaintiff, does not necessarily reflect that Long and/or Varnadoe's conduct was limited to putting Plaintiff on the ground. A reasonable jury could alternatively determine from the record that Long and/or Varnadoe used unreasonable force to tackle Plaintiff,

pin him to the ground, handcuff him behind his back, and strike his ribs while handcuffed, or to assist Strickland in doing the same.

In their objection to the R & R, Long and Varnadoe raise that, contrary to the Magistrate Judge's finding, it is disputed whether they participated in Plaintiff's arrest. But each officer testified that he did participate in the arrest at some point in the timeline from Plaintiff being taken to the ground and put in the car. Defendants also raise that the record, according to Plaintiff's testimony, does not reflect use of excessive force by Long and/or Varnado as required for the first prong of a qualified immunity defense because "Plaintiff has denied that Long and Varnadoe took him down." (Dkt. No. 54 at 8.) Plaintiff did testify that it was Strickland who walked 35 to 40 feet up the driveway before he "charged at me" "smashed me to the ground," "handcuffed me . . . flat down on my stomach," "started kneeing me on my left side," that Strickland approached Plaintiff by himself, and that his injuries were from being tackled "by Andy Strickland." (Dkt. No. 43-3 at 26, 29, 30, 38.) But he also testified that "at least one person came up that driveway while Andy hit me in my left side" while face-down on the ground, although he did not know which officer that was. (*Id*. at 30.) Plaintiff was also asked by Defense counsel whether "they" lifted Plaintiff off the ground, and he responded "Yes." (*Id*. at 31.) Plaintiff also noted that the "arrest report say[s] that David Long arrested me[.]" (*Id*. at 32.) Construed in favor of the non-movant, this record does support finding a constitutional violation relevant to Defendants' qualified immunity defense. Plaintiff also objected to the R & R only in that it failed "to discuss and find applicable an additional, alternative basis for the liability of Defendants Long and Varnadoe under § 1983, that is, bystander liability[.]" (Dkt. No. 53 at 2.) Plaintiff did not raise bystander liability on summary judgment. The Magistrate Judge was not required to make findings on arguments that Plaintiff chose to omit from his briefing.

The Magistrate Judge recommends denying Defendants' motion for summary judgment on the use of excessive force claim as to Long and Varnadoe, and the Court adopts that recommendation.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R (Dkt. No. 52) as the order of the Court. Defendants' motion for partial summary judgment (Dkt. No. 43) is **granted in part and denied in part** as specified herein. The surviving claims are the Sixth Cause of Action's claim for use of excessive force by Long and Varnadoe (surviving summary judgment), and use of excessive force by Strickland (not targeted by summary judgment).

**AND IT IS SO ORDERED.**

                                        s/ Richard Mark Gergel
                                        Richard Mark Gergel
                                        United States District Judge

May 19, 2022
Charleston, South Carolina